**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED GRANITE & QUARTZ, INC., and UNITED GRANITE NJ, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>EMURO TRANSPORT, LLC, TOTAL QUALITY LOGISTICS, LLC, JOHN DOES 1-100, JANE DOES 1-100, and ABC CORPORATIONS 1-10,<br><br>Defendants. | Civil Action No. 23-01673 (GC) (DEA)<br><br>**OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon Defendant Total Quality Logistics, LLC's Motion to Dismiss (ECF No. 7) Plaintiffs' Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiffs opposed, and Defendant replied. (ECF Nos. 11 & 14.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED** in part, and the case will be **REMANDED** to the Superior Court of New Jersey.

**I.**    **BACKGROUND**

    A.  **FACTUAL BACKGROUND**[1]

    Plaintiff United Granite & Quartz, Inc., is based in New Jersey and is the

---

[1]   On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the Complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

"successor" corporation of Plaintiff United Granite NJ, LLC. (ECF No. 1 ¶ 1.) Defendant Total Quality Logistics, LLC (TQL), is based in Ohio. (*Id.* ¶ 5.) TQL "delivers shipments of commercial goods and arranges for delivery of shipments of commercial goods." (*Id.* ¶ 12.) Plaintiffs have used TQL's services for its shipping needs since approximately 2016. (*Id.* ¶ 13.)

In July 2020, Plaintiffs and TQL entered into a contract (the Agreement) governing the transportation services TQL provided to Plaintiffs.[2] The document is titled "Total Quality Logistics Customer Application." (ECF No. 7-1 at 21-25.[3]) The second page of the Agreement shows that the customer that filled out the form is "United Granite NJ LLC," with the same business address as Plaintiffs. (*Id.* at 22; ECF No. 1 ¶¶ 1-2.) The fifth page of the Agreement is titled "General Terms and Conditions" and states in relevant part:

> These General Terms and Conditions ("General Terms") apply to all transportation services provided by Total Quality Logistics, LLC . . . .
>
> 1. . . . These General Terms supersede any prior terms or agreements between Company and Customer related to the subject matter of these General Terms and are effective for one (1) year, automatically renewing for successive one (1) year periods, unless terminated by either party by providing 30 days written notice to the other party.

---

[2] Generally, this Court may only consider the pleading when deciding a motion to dismiss. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). But this Court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.* "Documents attached to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. . . ." *Id.* Here, Plaintiffs did not attach the Agreement to their Complaint, but allege that they "entered into a contract with [TQL]" and accuse Defendants of breaching "the implied covenant of good faith and fair dealing implicit in all contracts." (ECF No. 1 ¶¶ 40, 43.) TQL attached the Agreement as an exhibit to its motion to dismiss. (ECF No. 7-1 at 21-25.) In opposition, Plaintiffs acknowledge that the Agreement is the contract referenced in their Complaint. (ECF No. 11 at 2-4.) Neither party disputes the Agreement's authenticity. For these reasons, the Court finds that the Agreement is a document that is integral to the Complaint and will consider it in deciding Defendant's motion to dismiss.

[3] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

> If, however, the parties continue to conduct business after termination, these General Terms will apply. . . .
>
> . . . .
>
> 5. TQL is a transportation broker only, arranging transportation of freight by independent third-party motor carriers ("Contract Carriers"). If TQL is listed on Bills of Lading, it is for convenience only and does not change TQL's status as a broker only. . . .
>
> . . . .
>
> 9. These General Terms will be governed by the laws of the State of Ohio, except to the extent that federal transportation laws and regulations preempt those laws.  The state courts located in Clermont County, Ohio will have exclusive and irrevocable jurisdiction over and will be the exclusive and mandatory venue for any claim, counterclaim, dispute, or lawsuit arising in connection with any transactions, loads, or other business between Company and Customer, and Customer consents to and waives any objection to such jurisdiction.
>
> [(ECF No. 7-1 at 25.)]

The General Terms and Conditions identify, at the bottom, "United Granite NJ LLC" as the customer and contains an electronic signature and date. (*Id.*)  Below these lines, the Agreement then states: "By signing above, or electronically, Customer agrees to these General Terms." (*Id.*)

On December 11, 2021, Plaintiffs hired TQL to transport granite, quartz, and marble slabs "by freight via Defendant, TQL" from Hillsborough, New Jersey, to Colmar, Pennsylvania. (*Id.* ¶¶ 10-11, 16.)  Plaintiffs value the slabs at $88,729.10. (*Id.* ¶ 10.)  TQL "assured Plaintiffs . . . that all of the goods transported were insured up to the limits of $100,000," and it advised Plaintiffs that they needed to alert TQL if the value of the goods exceeded $100,000. (*Id.* ¶¶ 14-15.)

Plaintiffs allege that, "[u]pon information and belief, [TQL] entrusted Defendant, [Emuro Transport, LLC (Emuro)] to transport the goods in question." (*Id.* ¶ 17.)  Emuro is a trucking company based in New Jersey that "transports commercial goods via tractor trailer throughout the

3

United States." (*Id.* ¶ 3-4.) On December 11, 2021, both Defendants "[Emuro] and/or TQL" accepted delivery and assumed control over the goods in New Jersey and transported the slabs via tractor trailer. (*Id.* ¶¶ 18-19). The slabs were in good condition at the time Defendants accepted delivery. (*Id.* ¶ 18.) While in transit from New Jersey to Pennsylvania, the tractor trailer flipped over onto its side, destroying all the slabs. (*Id.* ¶ 20.)

Shortly after the crash, TQL informed Plaintiffs of the destruction of their goods, "and initiated the claims process to reimburse Plaintiffs for the losses." (*Id.* ¶ 21.) On December 14, 2022, however, TQL advised Plaintiffs "that they were unable to bring this claim to a successful resolution." (*Id.* ¶ 22.) Plaintiffs allege that Emuro "did not have insurance to cover the cost of cargo." (*Id.* ¶ 23.)

### B. Procedural History

On February 15, 2023, Plaintiffs filed their Complaint in New Jersey Superior Court, Somerset County, Docket No. SOM-L-000191-23. (ECF No. 1.) The Complaint asserts eight causes of action. Count One is against Emuro for liability under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. (*Id.* ¶¶ 24-29.) Count Two is against TQL under the Carmack Amendment. (*Id.* ¶¶ 30-34.) Counts Three through Eight assert state and common law claims of negligence, breach of contract, breach of implied covenant, promissory estoppel, agency, and a claim under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, *et seq.* (*Id.* ¶¶ 35-55.) Counts Three through Eight are all asserted against TQL, but only Count Three for negligence is also asserted against Emuro. (*Id.*) It does not appear that Emuro has yet been served,[4] and Emuro has yet to make an appearance in the case.

---

[4] TQL's Certification of Service for its Notice of Removal states that it caused said Notice to be served upon Emuro "by courier, on March 24, 2023." (ECF No. 1-1 at 2.) Plaintiffs requested an issuance of summons for Emuro on April 14, 2023. (ECF No. 6.) The Clerk of Court issued a

On March 24, 2023, TQL removed the case to federal court.[5] (*Id.* at 1-3.) TQL then moved to dismiss. (ECF No. 7.) Plaintiffs opposed, and TQL replied. (ECF Nos. 11 & 14.)

## II.   STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020).

## III.   DISCUSSION

### A.   Count Two—Plaintiff's Carmack Amendment Claim against TQL

The parties focus on whether the forum-selection clause in the Agreement between

---

summons for Emuro on April 17, 2023. (ECF No. 8.) Since then, there has been no indication that Emuro has been served, nor has Emuro made an appearance in the case.

[5]   The Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 & 1337. The Court may exercise supplemental jurisdiction over state-law claims under § 1367(a).

Plaintiffs and TQL compels this matter to be dismissed in favor of it being litigated in Ohio. (ECF No. 7-2 at 13-18; ECF No. 11 at 18-23.) In reviewing the papers, however, it has become apparent to the Court that the parties agree that the federal claim against TQL upon which this matter was removed from the Superior Court of New Jersey is subject to dismissal. As a result, the Court does not have original jurisdiction and will remand the matter for venue and the other issues posed by the parties to be resolved in the state forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999))).

Count Two of Plaintiffs' Complaint asserts a federal cause of action pursuant to the Carmack Amendment against TQL, alleging that TQL held itself out as a "carrier" and is therefore liable under the statute. (ECF No. 1 ¶ 30-34.)

The statutory scheme commonly referred to as the Carmack Amendment, 49 U.S.C. § 14706, *et seq.*, established a uniform federal standard governing "liability for 'loss, damage, or injury' to goods while in interstate transit." *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 98 (3d Cir. 2020); *see also Certain Underwriters at Int. at Lloyds of London v. UPS of Am., Inc.*, 762 F.3d 332, 334-37 (3d Cir. 2014) (providing a brief history of the Carmack Amendment). The Carmack Amendment governs interstate liability "comprehensively," standardizing inconsistencies between the laws of different jurisdictions, which inconsistencies had previously made it "practically impossible for a shipper . . . to know [its potential liability]." *Certain Underwriters*, 762 F.3d at 334 (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913)). As such, "[f]or over one hundred years, the Supreme Court has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping." *Id.* at 335 (citing

*Adams*, 226 U.S. at 505-06). The law's preemptive force is exceedingly broad, enough to preempt "all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments." *Id.* at 335-36 (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996)).

The Carmack Amendment allows shippers to bring a civil action "against a delivering carrier" or any carrier "alleged to have caused the loss or damage." 49 U.S.C. § 14706(d). Given the law's broad preemptive force, courts consistently hold that the Carmack Amendment is the "exclusive cause of action for interstate-shipping contract [and tort] claims alleging loss or damage to property." *Certain Underwriters*, 762 F.3d at 336 (quoting *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688-90 (9th Cir. 2007)). The law supersedes all state and common law remedies— including breach of contract, negligence, conversion, and "every other action"— against carriers for loss or damage to interstate goods. *Id.*

Notably, the Carmack Amendment differentiates between motor carriers and a "broker," or a person "other than a motor carrier . . . that as principal or agent sells, offers for sale, negotiation for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). Given this distinction, "a carrier is liable [under the Carmack Amendment] for damages incurred during a shipment of goods, whereas a broker—someone who merely arranges for transportation—is not liable." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 285 (3d Cir. 2019); *see also* 49 U.S.C. § 14706(d) (allowing civil actions under the Carmack Amendment to be brought against carriers).

The Carmack Amendment also contains "special venue" provisions that apply to claims against carriers, and displace the general federal venue provision. 49 U.S.C. § 11706(d)(1). *See*

*also In re Lizza Equipment Leasing, LLC*, 614 B.R. 653, 661-62 (Bankr. D.N.J. 2020) (noting that the Carmack Amendment's special venue statute "will control over the general venue statutes" and that the Carmack Amendment's special venue provisions are restrictive so as to preclude application of the general venue provision, rather than permissive). *See also Caulfield Assoc., Inc. v. D&F Transfer, LLC*, Civ. No. 20-0861, 2020 WL 5076803, at *2 (E.D. Pa. Aug. 21, 2020). Moreover, the Carmack Amendment's special venue provisions can preempt forum selection clauses. *See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit. Corp.*, 561 U.S. 89, 98 (2010) ("Carmack also limits the parties' ability to choose the venue of their suit.").[6]

Therefore, before the Court can reach the enforceability of the forum selection clause, the Court must determine whether Plaintiffs plausibly alleged that TQL acted as a carrier under the Carmack Amendment. If Plaintiffs plausibly allege that TQL acted as a carrier, the Court must next determine whether the Carmack Amendment's special venue provisions render the choice-of-venue provision in the Agreement unenforceable. *See, e.g., Caulfield*, 2020 WL 5076803, at *2 (deciding the preliminary issue of the defendant's status as a broker or carrier before determining the Carmack Amendment's effect on a forum selection clause's enforceability).

To determine whether a party acted as a carrier or broker, courts look to "whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods . . . regardless of whether it conducted the physical transportation." *Tryg*, 767 F. App'x

---

[6] The Carmack Amendment's special venue provisions do not preempt forum selection clauses if the shipper and carrier "in writing, expressly waive any or all rights and remedies" under the Carmack Amendment (*see* 49 U.S.C. § 14101(b); *see also Mich. Custom Machs., Inc. v. AIT Worldwide Logistics, Inc.*, 531 F. Supp. 3d 1208, 1212-13 (E.D. Mich. 2021)). But here, the forum selection clause at issue does not expressly waive any provisions of the Carmack Amendment (ECF No. 7-1 at 25), nor do the parties so argue. Thus, it is necessary to first determine whether the Carmack Amendment applies to TQL before determining whether its special venue provisions would preempt the forum selection clause at issue.

at 286-87. Whether a party has accepted such responsibility—and thus, whether it acted as a carrier or broker—is ultimately a question of fact. *See Beecher's Handmade Cheese, LLC v. New Sound Transp. LLC*, Civ. No. 21-12809, 2022 WL 3681258, at *3 (D.N.J. Aug. 25, 2022) (citing *Tryg*, 767 F. App'x at 286). Courts examine how the party held itself out, *Tryg*, 767 F. App'x at 286, as well as the understanding among the parties, *Louis M. Marson Jr., Inc. v. Alliance Shippers, Inc.*, 438 F. Supp. 3d 326, 331-32 (E.D. Pa. 2020).

In the Complaint, Plaintiffs allege that TQL "delivers shipments of commercial goods" and "held itself out to Plaintiffs as a motor carrier." (ECF No. 1 ¶¶ 12, 31.) Plaintiffs also repeatedly allege that "Defendants, Emuro and/or TQL" accepted delivery of the slabs, assumed control of the goods, and transported the slabs via tractor trailer. (*Id.* ¶¶ 18-19.) In its motion to dismiss, TQL points to paragraph 5 of its Agreement with Plaintiffs, which states that "TQL is a transportation broker only, arranging transportation of freight by independent third-party motor carriers." (ECF No. 7-2 at 3-4, 25.)

In their opposition papers, Plaintiffs concede the point, writing that "[a]fter reviewing TQL's motion to dismiss, and the relevant General Terms and Conditions of TQL's application, [Plaintiffs] concede[] that TQL sufficiently identified itself as the broker and Carmack Amendment claims do not apply to them, even though [Plaintiffs] always thought of TQL as the trucking company." (ECF No. 11 at 16.) Given Plaintiffs' concession and their apparent abandonment of the Carmack Amendment claim against TQL, Count Two of the Complaint against TQL is subject to dismissal without prejudice. *See Sevajian v. Castro*, Civ. No. 20-1591, 2022 WL 17733675, at *3 n.1 (D.N.J. Dec. 6, 2022) ("Plaintiff appears to have abandoned his negligent hiring claim, as he did not offer any argument in opposition to Defendants' motion to dismiss this claim."). Moreover, even if Plaintiffs had not abandoned their Carmack Amendment

claim against TQL, their concession that TQL "sufficiently identified itself as the broker and the Carmack Amendment claims do not apply to [it]" is dispositive. *See AMG*, 796 F. App'x at 99 (explaining that liability under the Carmack Amendment does not extend to brokers); *Tryg*, 767 F. App'x at 285 ("Under the Carmack Amendment . . . a carrier is liable . . . whereas a broker—someone who merely arranges for transportation—is not liable").

### B. PLAINTIFFS' STATE-LAW CLAIMS AGAINST TQL

Because the parties have agreed that the sole federal claim against TQL is subject to dismissal, there is no federal question jurisdiction under 28 U.S.C. § 1331.[7] TQL has made no attempt to invoke diversity jurisdiction, and in that absence, the Court is unable on its own initiative to find that diversity would be appropriate. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) ("[T]he party invoking diversity jurisdiction . . . bears the burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.").

Therefore, given the dismissal of the federal claim against TQL over which this Court had original jurisdiction and the relatively early stage of this litigation, the Court will decline to exercise supplemental jurisdiction over the remaining state-law counts of Plaintiffs' Complaint against TQL and the matter will be remanded to state court. *See Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) ("A court may [decline supplemental jurisdiction] under 28 U.S.C. § 1367(c)(3) when it dismisses all claims over which it has original jurisdiction.").

The Court notes that a Carmack Amendment claim has been separately asserted in the

---

[7] The Court cannot exercise original jurisdiction over this matter under diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there does not appear to be complete diversity among the parties, nor does the Court have the requisite information necessary to determine the citizenship of each member of Plaintiff United Granite NJ, LLC and Defendant Emuro Transport, LLC. (ECF No. 1 ¶¶ 1-2 (Plaintiffs are organized under the laws of the State of New Jersey, and have a principal place of business in New Jersey); ¶ 3 (Defendant Emuro is "a limited liability company . . . with its office and place of business located [in] . . . New Jersey")).

Complaint by Plaintiffs against Emuro, but in the more than nine months since this case has been pending in federal court, there is no indication that Emuro has in fact been served to bring them under this Court's jurisdiction. Emuro has not appeared in this action nor has it filed an answer or response of any kind to the Complaint. Accordingly, the mere fact that Emuro is listed in the caption is an insufficient basis for the case to remain in federal court when TQL's basis for removal no longer exists. *See Cooper v. Pressler & Pressler LLP*, 912 F. Supp. 2d 178, 189 (D.N.J. 2012) (declining to exercise supplemental jurisdiction where other defendants that had federal claims asserted against them had not been served with the complaint); *see also* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

### IV.     CONCLUSION

For the foregoing reasons, Defendant TQL's Motion to Dismiss (ECF No. 7) is **GRANTED** in part. Count Two of Plaintiffs' Complaint (ECF No. 1) is **DISMISSED** without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against TQL (Counts Three through Eight), and the case will be **REMANDED** to the Superior Court of New Jersey. An appropriate Order follows.

Dated: December 22, 2023

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE